UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re:

LAMON R. CASTLEBERRY,                     Case No.      03-34061
                                          Chapter 7
          Debtor.                         Hon. Walter Shapero

_____/

KONRAD MICHELI,

          Plaintiff,

v.                                        Adv. Pro. No.  05-3005

LAMON R. CASTLEBERRY,

          Defendant.

_____/

OPINION GRANTING DEFENDANT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW

          Before the Court is Plaintiff's Complaint to revoke Defendant's discharge pursuant to 11

U.S.C. § 727(d)(1).   Two days of trial occurred in this proceeding.   At the conclusion of

Plaintiff's case in chief, Defendant moved for judgment as a matter of law.   Pursuant to Fed. R.

Bankr. P. 7052(c), the Court GRANTS Defendant's motion since Plaintiff failed to prove he

lacked knowledge of Defendant's possible fraudulent conduct as required by § 727(d)(1).


I. Jurisdiction

          This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§ 1334(a) and § 157(a).   This matter is a core proceeding under 11 U.S.C. § 157(b)(2)(A).


II.  Facts

          Defendant, Lamon R. Castleberry (Defendant), filed a chapter 7 bankruptcy petition on

October 14, 2003.   As reflected in the docket of Defendant's bankruptcy case, the Clerk of the

Court sent notice of Defendant's chapter 7 bankruptcy case to the 13 entities listed on Defendant's matrix. Plaintiff, Konrad Micheli (Plaintiff), was listed on Defendant's matrix. On October 29, 2003, Defendant filed his Schedules and Statement of Financial Affairs. (Pl.'s Ex. 1.) Later, Debtor filed amendments to his Schedules B and C on December 28, 2004. (Pl.'s Ex. 1.) Additional amendments were filed by Debtor to his Schedules A, B, and C on March 10, 2005. (Pl.'s Ex. 1.) Plaintiff was listed as a "notice only" unsecured creditor on Defendant's Schedule F. Plaintiff informed his then attorney, Bernhardt D. Christensen, of Defendant's bankruptcy case. The § 341 hearing occurred on November 13, 2003. Mr. Christensen attempted to but was not successful in being present at Defendant's § 341 hearing (Stip. Final Pre-Trial Order at ¶ 4.) On November 24, 2003, the Chapter 7 Trustee (Trustee) filed a "Report of No Assets." The deadline to object to discharge was January 12, 2004. Defendant was granted a discharge on January 20, 2004. (Stip. Final Pre-Trial Order at ¶ 4.)

Almost one year later, on January 14, 2005, Plaintiff commenced this adversary proceeding against Defendant to revoke the discharge. In his complaint, Plaintiff alleged that Defendant "intentionally excluded/omitted almost all of his assets from being listed in his Schedule B[, and that] [h]e excluded/ignored all of his pre-petition litigation and any asset transfers made within a year before" he filed his Chapter 7 bankruptcy petition. (Compl. at ¶ 5.) On January 24, 2005, Plaintiff filed an amended complaint (Amended Complaint). In his Amended Complaint, Plaintiff alleged that while Defendant's Amended Schedule B lists those assets originally excluded or omitted by Defendant in his original Schedule B (Am. Compl. at ¶ 5), Defendant failed to amend his Statement of Financial Affairs to accurately disclose the pre-petition litigation between Plaintiff and Defendant (Am. Compl. at ¶ 6) and still failed to fully disclose the extent of his assets and the pre-petition litigation between Plaintiff and Defendant to the Trustee. (Am. Compl. at ¶ 9.) Plaintiff argued that "sufficient grounds, under Bankruptcy Code § 727(d) and (e)" existed to revoke Defendant's discharge (Am. Compl. at ¶ 11), though not specifying however which one of the three grounds contained in § 727(d) he relied on.

Defendant answered Plaintiff's Amended Complaint denying as untrue that he excluded or omitted assets in his original Schedule B (Pl.'s Ex. 4 at ¶ 5) and stating that his December 28, 2004 amendments to his Schedules B and C provided a more detailed listing of his assets. Defendant admitted that he had not disclosed the pre-petition litigation pending with Plaintiff in

his Statement of Financial Affairs. Defendant generally denies that grounds exist to revoke his discharge and, in addition, raised numerous affirmative defenses. First, that Plaintiff's Amended Complaint was barred by the doctrine of laches; Second, that Plaintiff's Amended Complaint failed to state a claim; Third, that Plaintiff's Amended Complaint, although not stylized as such, was in actuality an untimely attempt by Plaintiff to obtain the disallowance of Debtor's claimed exemptions and a determination that the debt Defendant owes Plaintiff is a nondischargeable debt under § 523(a)(6).

At trial, both Plaintiff and Defendant testified as part of Plaintiff's case-in-chief. Defendant testified that he's been a "business man" since 1995 and a partner with Plaintiff operating an auto transmission business known as "Gary's Transmission" at 2505 Fenton Road for at least six years prior to his bankruptcy filing. Defendant stated that their partnership ended sometime in November 2001 when Plaintiff walked out of the business, after which Defendant continued to operate the business and occupy the Fenton Road premises for 10 months after Plaintiff left. He further testified that Plaintiff never physically moved out of the building and possessed keys to the property but "just physically stopped showing up." Defendant testified that during this time he did not pay any rent but did pay property taxes. Defendant also testified that the land contract covering 2505 Fenton Road was in foreclosure and that sometime in 2002 Plaintiff made the necessary redemption payment on the property.

Sometime in October 2002, Defendant entered into a lease of real property on which he operated a different auto transmission business known as Fenton Road Transmission having purchased hoists and mechanic's tools (similar to what he had previously used at Gary's Transmission) in order to conduct that business. Defendant denied that he used any of Gary's Transmission equipment in his Fenton Road Transmission business, and was in fact, under a court order not to remove such equipment from the premises of Gary's Transmission, and that he had left hoists, transmission jacks, stands, "boost box" and carts at Gary's Transmission.

Plaintiff had commenced a civil action against Defendant in Genesee County Circuit Court in May 2002. Defendant filed his answer on October 17, 2002, about one year before his bankruptcy filing. Defendant's deposition was taken on September 10, 2003 at which his attorney, Mr. Robinson, represented him. He testified that he did not then discuss his intent to file bankruptcy with Mr. Robinson. He acknowledged that a proposed default judgment was

3

submitted for entry by Plaintiff in October 2003 and he thought his former bankruptcy counsel, Mr. Krcmarik, informed him about the default judgment prior to the date he filed bankruptcy.

With regard to his Schedules, Defendant admitted that the equipment he used at Fenton Road Transmission was not listed and he admitted that his original Schedule B indicates in response to question 27 that he did not have any personal property such as machinery, fixtures, equipment, and supplies used in a business. His explanation was that he was advised by his former bankruptcy attorney, Mr. Krcmarik, that if he owed money on any equipment, the equipment was not his or owned by him. Defendant also admitted that the pre-petition litigation he was involved in with Plaintiff was not listed in his Statement of Financial Affairs. He did not recall marking the box "none" as his response to Question 4 on the subject of the litigation. Defendant did testify that he gave a complete file about the pending litigation to Mr. Krcmarik.

Defendant explained that when he received notice of the Trustee's motion[1] to sell "his livelihood" to Plaintiff he knew there was a problem in his bankruptcy case. He testified that he went to see Mr. Krcmarik and was advised by Mr. Krcmarik that he would take care of it. He could not recall the exact date that he met with Mr. Krcmarik. When he tried to follow-up with Mr. Krcmarik, he learned that Mr. Krcmarik had been suspended from the practice of law.[2] Defendant testified that he learned that he had been given bad advice by Mr. Krcmarik after he consulted with his current attorney, Mr. John Streby, whom he hired about September 24, 2004.

With regard to any communication that took place between Plaintiff and Defendant after his bankruptcy filing, Defendant testified that he never personally told Plaintiff about his bankruptcy case. He stated that Plaintiff was "notified by my attorney."

The Court also heard testimony of Plaintiff, Konrad Micheli. Plaintiff admitted that he received notice of Defendant's bankruptcy case from the Clerk of the Court in late October 2003. He testified that he had no experience with bankruptcy and creditor issues so he contacted his

---

1. According to the docket of Defendant's bankruptcy case, the Trustee filed a "Motion to Sell and Transfer Certain Assets of the Estate to Konrad Micheli" on August 12, 2004.

2. The "Order of Suspension and Restitution" issued by the State of Michigan Attorney Discipline Board in *Grievance Administrator, et al., v. Francis Krcmarik* indicates that Mr. Krcmarik was suspended from the practice of law for 30 months commencing on September 1, 2004. (Def.'s Ex. A.) The order was issued on July 20, 2004 and effective on August 11, 2004. (Def.'s Ex. A.)

4

attorney, Mr. Christensen, who was his attorney in the pending state court litigation against Defendant. Plaintiff stated that Mr. Christensen explained to him that he could not take any further action because of the automatic stay and advised him to retain an attorney who practiced bankruptcy law. Plaintiff could not recall the specific date he spoke with Mr. Christensen, but acknowledged their conversation may have occurred prior to the 341 hearing in November, or sometime in December 2003 or as late as January 2004. Plaintiff thereafter met with and retained Mr. Chimovitz as his attorney in February 2004. Plaintiff stated that he first learned that his claim and the pending litigation were not listed in Defendant's Schedules or Statement of Financial Affairs from Mr. Chimovitz. Plaintiff admitted that he reviewed Defendant's bankruptcy Schedules and Statement of Financial Affairs for the first time after he retained Mr. Chimovitz.

Plaintiff testified that he's been in business on and off for approximately 25 years and during that time operated six or seven businesses. He testified that he "glanced" at the notice he received from the bankruptcy court but did not understand it, which led him to contact his attorney, Mr. Christensen, with whom he spoke prior to the November 13, 2003, § 341 hearing date. Plaintiff further testified that in the pending state court litigation, Mr. Christensen deposed Defendant in September 2003, during which a representation was made by Defendant or his attorney that if the "lawsuit went bad for him," he was going to file bankruptcy. Upon further questioning by the Court, Plaintiff reviewed a copy of the notice mailed by the Clerk of the Court. (Def.'s bankruptcy case, Doc. No. 4.) Plaintiff admitted receiving this notice.

At the end of Plaintiff's testimony, Defendant moved for judgment as a matter of law, arguing that Plaintiff's evidence did not establish all the necessary elements required under § 727(d)(1). Defendant argued that Plaintiff had failed to take any timely action to preserve his rights even though he received notice of Defendant's bankruptcy case and that Plaintiff "had a duty to diligently" investigate and obtain information prior to the period of time a discharge could be awarded to Defendant. In support of his motion, Defendant relied on *In re Richard*, 165 B.R. 642 (Bankr. W.D. Ark. 1994). The Court suspended the presentment of further evidence in the proceeding pending its ruling on the motion.

### III. Discussion

A.      Applicable Law - Section 727(d)(1)

"Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *Rezin v. Barr* (*In re Barr*), 207 B.R. 160, 165 (Bankr. N.D. Ill. 1997) (*quoting State Bank of India v. Kaliana* (*In re Kaliana*), 202 B.R. 600, 603 (Bankr. N.D. Ill. 1996)); *Wood v. Cochard* (*In re Cochard*), 177 B.R. 639, 644 (Bankr. E.D. Miss. 1995) (opining that "Section 727 is viewed as an extreme remedy to be awarded only where debtor's conduct was egregious and creditor's conduct was timely and conscientious.").  As a result, § 727(d) is liberally construed in favor of a  debtor and strictly construed against a moving party.  *In re Barr*, 207 B.R. at 165.

Section 727(d)(1) states:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]

11 U.S.C. § 727(d)(1).

A plaintiff is required to prove two elements under § 727(d)(1) by a preponderance of the evidence.  *In re Kaliana*, 202 B.R. at 603-04 (Discussing the split of authority that exists on the burden of proof required under § 727(d)(1) and finding that the appropriate burden of proof is preponderance of the evidence.).

Under the first element, a plaintiff is required to prove that the defendant "committed fraud in fact, not fraud in law or implied fraud." *Buckstop Lure Co. v. Trost* (*In re Trost*), 162 B.R. 740, 748 (Bankr. W.D. Mich. 1994) (*citing In re Albers*, 80 B.R. 414 (Bankr. N.D. Ohio 1987).  "[I]t is the debtor's fraud in obtaining the discharge that qualifies as grounds for revocation and not the debtor's fraud vis-a-vis the creditor." *Humphreys v. Stedham* (*In re Stedham*), 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005) (*citing Yoppolo v. Sayre* (*In re Sayre*), 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004)).  "The intentional omission of assets from the debtor's schedules has been found to qualify as grounds for revocation of a discharge under § 727(d)(1)." *In re Stedham*, 327 B.R. at 897  (*citing* 6 Lawrence P. King, et. al., Collier on

6

BANKRUPTCY, ¶ 727.16 [2] (15th ed. rev. 1999)).

The second element a plaintiff must prove is that he "did not know" of the fraud before the discharge was granted. 11 U.S.C. § 727(d)(1); *see also Borock v. Telesz* (*In re Ventimiglia*), 198 B.R. 205, 214 (Bankr. E.D. Mich. 1996) (*citing In re Trost*, 164 B.R. at 744.)). To establish this element, many courts require a plaintiff to demonstrate that "it did not know" or had no reason to know of any fraudulent acts by a debtor before discharge. *Mid-Tech Consulting, Inc., v. Swendra* (*In re Mid-Tech Consulting*), 938 F.2d 885, 888 (8th Cir. 1991) (holding that "dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud."); *Bowman v. Belt Valley Bank* (*In re Bowman*), 173 B.R. 922, 924 (B.A.P. 9th Cir. 1994) (*citing In re Dietz*, 914 F.2d 161, 163 (9th Cir. 1990)); *see also W. Suburban Bank of Darien v. Arianoutsos (In re Arianoutsos)*, 116 B.R. 116, 118 (Bankr. N.D. Ill. 1990); *Bear Stearns & Co., Inc., v. Stein*, (*In re Stein*), 102 B.R. 363, 367 (Bankr. S.D.N.Y. 1989) (concluding that "a requesting party must also establish that knowledge of the fraud for revocation purposes was not obtained until after the granting of the discharge."). It is the duty of a creditor or an interested party who suspects possible fraud to conduct a diligent investigation of a debtor's circumstances and any possible fraudulent conduct prior to discharge. *In re Mid-Tech Consulting*, 938 F.2d at 888.; *In re Stein*, 102 B.R. at 367.; *In re Kaliana*, 202 B.R. at 604.; *In re Cochard*, 177 B.R. at 643.

B.     Analysis

Based on the evidence in the record, the Court concludes that Plaintiff failed to carry his burden of proving that he "did not know" of Defendant's possible fraudulent acts until *after* discharge. Rather, the evidence establishes that he had knowledge of various facts that put him on notice of the fraud the Plaintiff avers Defendant engaged in. In order to preserve his rights, Plaintiff's possession of such knowledge required that he act in a timely manner to inquire into or further investigate Defendant's bankruptcy case. His failure to have done so is fatal to his discharge revocation case.

In his post-trial brief, Plaintiff argues that the "fraud" engaged in by Defendant consisted of his post-discharge amendments to his schedules. Plaintiff claims that the fraud committed by Defendant occurred because his post-discharge amendments indicate that he did not disclose in his original Schedules and first amendments: (1) his "owner's interest in assets belonging to

7

Ray's Transmission [sic]; (2) his co-owner's interest in the land and building at 2505 Fenton Road; (3) the pending state court litigation or Plaintiff's pending money claim; and (4) that Plaintiff and Defendant were partners in Gary's Transmission. (Pl.'s "Brief in Response" at 2.) (Doc. No. 15.) Plaintiff also alleges that Defendant's post-discharge amendments contain a false representation that Defendant owned Gary's Transmission as a sole proprietor. (Pl.'s "Brief in Response" at 2.) (Doc. No. 15.) The Court concludes that Plaintiff's effort to distinguish the representations made by Defendant in his original Schedules and subsequent amendments is without merit. Defendant's post-discharge amendments did not provide Plaintiff with any knowledge about an omitted asset that he did not possess prior to Defendant's discharge.

In his original Schedule B, Defendant represented he had an interest in "Ray's Transmission Service, Inc.", with a value of $ 2,500.00 and that he had other property interest in "tools of trade" with a value of $ 1,000. In his original Schedule C, Defendant claimed an exemption under § 522(d)(5) of "Ray's [sic] Transmission Service, Inc." valued at $2,500 and an exemption under § 522(d)(6) for "tools of trade" valued at $1,000. In his amended Schedule B dated December 21, 2004, Defendant disclosed his interest in leasehold, equipment, inventory, goodwill, telephone number all being used as "tools of his trade" with a value of $8,850.00." In his March 10, 2005 amendments, Defendant's Schedule A contained a detailed description about Defendant's "50% equitable interest as a joint land contract vendee with Konrad Micheli" of the 2505 Fenton Road property. Defendant's Amended Schedule B in response to question 27, contained a detailed breakdown about specific business equipment, machinery, and fixtures used by Defendant in his business. The details provided by Defendant consist of the purchase date and price of each asset as well as the current values ranging from $ 20.00 to $1,500.00. Some of this property was purchased in August and October 2002, which was after Plaintiff commenced his state court litigation against Defendant. In Defendant's Amended Schedule C, he claimed exemptions of (1) his "50% equitable interest as a joint land contract vendee in which Konrad Micheli was the other vendee" under § 522(d)(1) with a value of $ 25,000 and (2) the twelve pieces of machinery, equipment or fixtures disclosed by Defendant in his Amended Schedule B at their respective values pursuant to § 522(d)(6).

The Court is well aware that evidence exists in the record that indicates Defendant may not have absolutely fully complied with his duties under the Code. *See* 11 U.S.C. §§ 521(1),

8

521(3), and 542(a). That said, such does not perforce mean that the failures necessarily provide sufficient grounds to revoke a discharge. Defendant's Amended Schedules A and B contain substantially more detailed information about his interests in real and personal property than he disclosed in his original Schedules. (*See* Pl.'s Ex. 1.) However, the very nature of the parties' relationship and the knowledge possessed by Plaintiff about Defendant and his interests in certain real and personal property required Plaintiff to take immediate action to investigate the representations made by Defendant in his original Schedules and to exercise the rights provided to him under the Code. *See* 11 U.S.C. §§ 523(a) and 727(a). From the evidence in the record about the pre-petition contentious litigation between Plaintiff and Defendant, the Court determines that Plaintiff possessed sufficient knowledge and/or notice about the likelihood that Defendant would or could engage in fraudulent conduct prior to discharge.

Specifically, Plaintiff and Defendant were business partners for several years before a breakdown occurred in their partnership. At this point, Plaintiff sought intervention from a state court to protect his interests and rights. Plaintiff's complaint contains two cause of actions; count one involved breach of contract and count two involved conversion. (Pl.'s Ex. 5, Compl.) In support of Count I, Plaintiff alleged that he and Defendant entered into a land contract with a third party to purchase the real property located at 2505 Fenton Road and jointly owned and operated a transmission business known as "Gary's Transmission" from these premises. Plaintiff alleged that Defendant breached their contract when he (1) failed to make the land contract payments, allowed the land contract to go into foreclosure, and failed to reimburse Plaintiff for his portion of the redemption payment made by Plaintiff and (2) "changed the telephone system, closed business bank accounts, obtained a d/b/a solely in his name, and by selling or trying to sell equipment from the business." (Pl.'s Ex. 5, Compl. at ¶ 9.) With regard to the conversion count, Plaintiff reiterated his allegation about Defendant's actions involving business assets and equipment at Gary's Transmission. Plaintiff also alleged that Defendant had asserted "dominance" over the business and its assets and despite Plaintiff's requests Defendant refused to return property or restore the status quo. Plaintiff alleged in his motion for a temporary restraining order that "Defendant is uncooperative with Plaintiff in attempting to resolve their business disputes, and that he "faced imminent permanent loss of tangible assets based on Defendant's past acts in removing property." (Pl.'s Ex. 5, Mot. for T.R.O. at ¶ 3.) In the

9

affidavit filed in support of his motion, Plaintiff represented that he feared Defendant would remove equipment from Gary's Transmission. (Pl.'s Ex. 5, Aff. of May 29, 2002.) A temporary restraining order issued on June 6, 2002, which precluded Defendant "from selling and/or disposing of, or removing, any property located in the business premises at 2505 Fenton Road, Flint, Michigan." (Pl.'s Ex. 5, "Temporary Restraining Order and Order to Show Cause.")

On October 10, 2002, Plaintiff filed a motion seeking among other things possession of the real and personal property associated with Gary's Transmission. (Pl.'s Ex. 5, "Motion to Allow Plaintiff Possession of the Real and Personal Property of the Business and Transfer of Business Telephone Number to the Address of the Business Real Property and to Allow the Entry of a Default Judgment for Failure to Timely Answer Complaint" (10/10/02 Motion)). Plaintiff alleged that Defendant had failed to surrender keys to the business premises even though the parties had agreed he would do so within a few days of September 16, 2002 and Defendant's agreement that "property would remain in the business building." (Pl.'s Ex. 5, 10/10/02 Motion at ¶ 4 and ¶ 5.) Plaintiff also alleged that he went to the building looked in a window and observed that "all the property with the exception of a couple of hoists ha[d] been removed." (Pl.'s Ex. 5, 10/10/02 Motion at ¶ 6.) Plaintiff further alleged that "Defendant may have set up the business in a new location a few blocks from the current . . . business, using business assets." (Pl.'s Ex. 5, 10/10/02 Motion at ¶ 7.)

The evidence submitted by Plaintiff overwhelmingly indicates that Plaintiff possessed some knowledge of the nature and extent of the Defendant's interest in real property located at 2505 Fenton Road and personal property such as machinery and equipment that either remained at Gary's Transmission or that could have been used by Defendant in his transmission business known as Fenton Road Transmission. Plaintiff was well aware of Defendant's land contract vendee interest in the 2505 Fenton Road property since they were jointly obligated on the land contract and any omission made by Defendant could have easily been discovered by Plaintiff especially since this omitted asset and/or non-disclosure by Defendant was at issue in the parties' pre-petition litigation. *See In re Stedham*, 327 B.R. 889, 899-900 (Bankr. W.D. Tenn. 2005) (determining that a debtor's failure to list disputed property "as an asset should put [a] creditor on immediate notice that the debtor may be attempting to fraudulently conceal property."). In fact, Plaintiff's admission that he realized his claim was not disclosed by Defendant in his

Schedules and/or Statement of Financial Affairs once he simply reviewed Defendant's Schedules in February 2004 subsequent to his employment of Mr. Chimovitz, indicates just how easy Defendant's alleged fraud could have been discovered. In addition, Plaintiff was well aware of Defendant's interest in machinery and equipment used in Gary's Transmission prior to Defendant's bankruptcy filing and discharge. Yet, despite all his knowledge, Plaintiff did not take "timely and conscientious" action.

Additional evidence in the record indicates that neither Plaintiff or his agent reviewed Defendant's petition or schedules prior to discharge, did not attend the § 341 hearing, did not request a Rule 2004 examination of the Defendant, did not file a complaint objecting to Debtor's discharge pursuant to § 727(a) within 60 days after the 341 hearing as required by Fed. R. Bankr. P. 4004, and did not commence a § 523(a) proceeding against Defendant. Plaintiff admitted that he may have been advised by Mr. Christensen to retain a bankruptcy practitioner in late November 2003, December 2003 or January 2004. The earlier this conversation occurred would have provided more time for Plaintiff to investigate Defendant's representations and/or exercise his rights under §§ 523 or 727. But even if the conversation occurred in early January 2004, Plaintiff would have had sufficient opportunity to conduct a diligent investigation. His belated retention of bankruptcy counsel is unavailing in light of his indicated knowledge and when he acquired it. Therefore, in light of the record in this case, the Court is unable to find that Plaintiff "did not know" of the Defendant's alleged fraud until after Defendant obtained his discharge.

## IV. Conclusion

For the reasons stated above, the Court GRANTS Defendant's motion for judgment as a matter of law and DISMISSES Plaintiff's Amended Complaint to revoke Defendant's discharge.

.

**Entered: August 15, 2006**

                                        **/s/ Walter Shapero**
                              **Walter Shapero**
                              **United States Bankruptcy Judge**